# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RAYMOND FLYNN,**

              **Plaintiff,**

-vs-                                    **Case No. 6:06-cv-1186-Orl-UAM**

**COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,**

              **Defendant.**

_____

## **MEMORANDUM OF DECISION**

Plaintiff Raymond Flynn ["Flynn"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for a period of disability, disability insurance benefits, and Supplemental Security Income benefits. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**I.**      **PROCEDURAL HISTORY**

On August 23, 2002, Flynn filed a claim for disability insurance benefits and supplemental security income benefits, claiming disability as of July 29, 2002. R. 61, 276. On August 12, 2004, the Honorable Gerald F. Murray, Administrative Law Judge ["ALJ"], held a hearing on Flynn's claim in Daytona Beach, Florida. R. 293. Attorney Richard A. Schwartz represented Flynn at the hearing. *Id*. The ALJ heard testimony from Flynn and Mark Capps, a vocational expert.

On September 1, 2004, the ALJ issued a decision that Flynn was not disabled and not entitled to benefits. R. 290-304. The Appeals Council granted Flynn's request for review and vacated and remanded the case to an ALJ on December 17, 2004. R. 305, 316-18.

On May 10, 2005, the ALJ conducted a second hearing. R. 358. Flynn was again represented by Attorney Schwartz. *Id*. The ALJ heard testimony from Flynn and Donna Mancini, vocational expert ("VE"). R. 358-81. Following a review of the medical and other record evidence, the ALJ found that Flynn could not perform his past relevant work as a heavy equipment operator or construction worker. R. 27, 29 Finding 7. The ALJ found that Flynn nevertheless retained the residual functional capacity ["RFC"] to perform a significant range of sedentary work. R. 30, Findings 6, 11. Applying the Medical-Vocational Guidelines, the ALJ concluded that Flynn was not disabled. R. 30, Finding 12.

The Appeals Council denied review on June 1, 2006. R. 7-10. On August 7, 2006, Flynn timely appealed the Appeals Council's decision to the United States District Court. Docket No. 1. On March 23, 2007, Flynn filed in this Court a memorandum of law in support of his appeal. Docket No. 20. On May 22, 2007, the Commissioner filed a memorandum in support of his decision that Flynn was not disabled. Docket No. 21. The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Flynn assigns four errors to the Commissioner. First, Flynn claims that the Commissioner erred in failing to consider the effects of his medication on his ability to work. Second, Flynn claims that the ALJ erred by failing to propose a hypothetical question to the VE that included all of Flynn's impairments. Third, Flynn claims that the Commissioner erred in refusing to allow Flynn's spouse

to testify. Finally, Flynn argues that the Commissioner erred as the decision was not supported by substantial evidence and incorrect legal standards were applied.

The Commissioner argues that substantial evidence supports his decision to deny disability. First, the Commissioner argues that Flynn did not complain of medication side effects to a physician and this constitutes substantial evidence of a lack of side effects. Second, the Commissioner argues that Flynn misunderstood the hypothetical asked and that the hypothetical did include all of his limitations. Third, the Commissioner argues that Flynn has failed to show any prejudice from refusing to allow his wife to testify. Finally, the Commissioner argues it applied the correct legal standards.

## III.  THE STANDARD OF REVIEW

### A.  AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.

1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B.     REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C. REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must find either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation). After a

sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090 - 92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1] *Id.*

---

[1] The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

## V.  APPLICATION AND ANALYSIS

### A.  THE FACTS

Flynn was born June 7, 1963, and alleges he became disabled on July 29, 2002, at 39 years of age. R. 61. He completed the equivalent of a high school education (Tr. 21). From April 1989 until July 2002, he worked as a foreman and a heavy equipment operator. R. 76, 88-92. Flynn stopped work on July 29, 2002 when his treating orthopaedic physician placed him on no work status. R. 254.

Flynn sustained a work-related back injury in approximately 1990. R. 75, 152, 164. George W. Zimmerman, D.O. began treating Flynn in July 1998 for bilateral lower extremity pain. R. 161. X-rays revealed some mild degenerative changes, but no gross defects, deformities, or abnormalities. *Id*. Dr. Zimmerman diagnosed Flynn with a herniated nucleus pulposus L5 on the left. *Id*. Medication was prescribed and additional testing ordered. *Id*.

The prescribed medication provided total resolution of Flynn's pain and he did not see Dr. Zimmerman again for his back until May 5, 1999. R. 157. Flynn exhibited low back pain with faber and fadire testing, but no radicular symptoms. R. 157. Dr. Zimmerman determined that an MRI and EMG was unwarranted at that time. He recommended that Flynn lose weight, undergo physical therapy to gain flexibility and prescribed Celebrex. R. 158.

When Flynn continued to report pain, an MRI was taken in October 1999, which revealed degenerative disc disease as well as L5-S1 large broad disc herniation, as well as some facet arthritis that caused bilateral neural foraminal narrowing, in addition to L4-L5 mild diffuse bulging, causing mild spinal and mild to moderate bilateral neural foraminal narrowing. R. 152. The pain was intermittent and often occurred while sitting. *Id*. He also complained of increased back pain with

lifting. *Id*. Dr. Picchiello recommended epidural steroid injections and physical therapy. R. 153. Dr. Zimmerman opined that while epidural steroid injections would be helpful, they were not truly necessary due to a lack of radicular symptoms. R. 151. As of October 27, 1999, Dr. Zimmerman determined upon examination that Flynn had no pain and that further treatment at that point was moot. *Id*.

On November 17, 1999, Flynn again complained to Dr. Zimmerman about chronic pain going down his left leg anytime he does any type of labor. R. 150. Dr. Zimmerman noted that there was evidence of radiculopathy by electromyogram and magnetic resonance imaging showed mild changes. *Id*. Because workers' compensation had denied pain management, Dr. Zimmerman had nothing else to offer, and would refer him to Dr. Kollmer for surgical intervention. *Id*.

Flynn first visited Charles E. Kollmer, M.D. on August 3, 2000. R. 265. Physical examination showed Flynn to have left-sided dysesthesia. He had a mildly positive hyperextension test and positive posterior iliac crest tenderness. *Id*. Dr. Kollmer gave Flynn a trial of Neurontin and prescriptions for Ultram and Skelaxin. *Id*. No work restrictions were imposed. *Id*.

One year later, on August 2, 2001, Flynn returned to Dr. Kollmer with complaints of increased pain. R. 262. Physical examination showed positive significant paraspinal muscle spasm, particularly on the left side. *Id*. He had decreased forward flexion at 30 degrees. *Id*. He had positive hyperextension test and positive sitting root test, positive straight-leg raising at 30 degrees on the left side, positive sciatic notch tenderness and positive tension signs and bowstringing. *Id*. Dr. Kollmer prescribed Ambien as needed for sleep, Skelaxin as needed for pain or spasm, and Mobic. R. 263.

Physical therapy was prescribed for three weeks. *Id*. No work restrictions were imposed in his supervisory position. *Id*.

An MRI of the lumbrosacral spine taken on August 10, 2001, showed disc herniations L4-5 and L5-S1 compromising the neural foramen bilaterally. R. 259, 264. He also had disc bulges at L2-3 and L3-4, which impinge upon the thecal sac. R. 259, 264. Anne I. Dunham, M.D. recommended epidural steroid injections. R. 260. Epidural steroid injections were administered on September 4, and September 11, 2001. R. 257-58.

Dr. Kollmer examined Flynn again on May 14, 2002. R. 256. Dr. Kollmer diagnosed multilevel degenerative disc changes with associated DISH syndrome, evidence of herniated disc at L4-5 and L5-S1, and spinal enthescopy towards the left side. *Id*. Dr. Kollmer gave Flynn an injection in the affected region, and prescribed Lortab as needed for pain and Zanaflex as needed for spasm or pain. *Id*. Flynn could continue work as a supervisor. *Id*.

On July 31, 2002, Dr. Kollmer performed surgery on Flynn consisting of a decompressive laminectomy at L4-5, L5-S1 with a transpedicular lumbar antibody fusion and pedicle screw fixation, a partial fasciectomy of L3-4 bilaterally requiring a facet screw fixation at L3-4, a posterolateral transverse process fusion from L3 to S1 bilaterally, an allograft and an autograft with pain pump insertion. R. 185-188.

Two months post-surgery, Flynn continued to complain of pain in his buttocks with prolonged sitting, as well as occasional paraesthesias down his legs. R. 247. He also complained of severe difficulty sleeping. *Id*. Dr. Kollmer opined that Flynn was continuing to make good progress. *Id*. Dr. Kollmer prescribed Ambien as needed for sleep, increased his dosage of Zanaflex and continued

a prescription for Zoloft.  R. 248.  Dr. Kollmer recommended that Flynn begin walking for 30 minutes at a time to build his endurance.  *Id.*

On November 12, 2002, Dr. Kollmer saw Flynn.  R. 240.  X-rays showed that Flynn's lumbosacral spine was in good alignment, the fusion appeared to be progressing adequately, and the hardware was in good alignment and position.  *Id.*  Flynn complained about aches and pains about the back with occasional radicular symptoms, particularly on the left side.  *Id.*  Dr. Kollmer refilled his prescriptions for Zanaflex, Percocet, OxyContin, Ambien and Zoloft, and recommended that Flynn remain off work at the time.  *Id.*  On December 10, 2002, Dr. Kollmer increased Flynn's Neurontin prescription and ordered continued physical therapy.  R. 238.

On January 27, 2003, a State Agency physician diagnosed Flynn with lumbar degenerative disc disease and found that Flynn had the following physical limitations: lift/carry occasionally up to 20 pounds; lift/carry frequently up to 10 pounds; stand/walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push/pull ability was unlimited.  R. 168-75.

On February 10, 2003, Dr. Kollmer saw Flynn again.  R. 235.  Flynn continued to complain of intermittent pain along the right anterior thigh, pain about the back, pain in the left buttocks and low back pain with occasional shooting, stabbing pains in the left dorsum of the foot.  *Id*.  Dr. Kollmer refilled prescriptions for OxyContin, Percocet, and Restoril.  *Id*.  He also increased the Neurontin prescription.  *Id*.  Flynn was to continue in an aggressive strengthening program with physical therapy.  *Id*.  He is to remain out of work.  *Id*.

On February 13, 2003, a State Agency psychiatrist, Alejandro F. Vergara, M.D., completed a Psychiatric Review Technique Form.  R. 194-207.  Dr. Vergara opined that Flynn had an anxiety-

related disorder that was not severe. R. 194. He was mildly anxious with depressed mood. R. 197. Flynn had mild difficulties maintaining concentration, persistence or pace. R. 204.

On May 16, 2003, a second State Agency psychologist, Wendy Silver, Psy. D., completed her review. R. 208-21. Dr. Silver opined that Flynn had an affective disorder that was not severe. R. 208. Specifically, she found that Flynn had an adjustment disorder with anxious and depressed mood, and mild difficulties in maintaining attention, concentration and pace. R. 211, 218.

On June 23, 2003, Dr. Kollmer completed a form describing Flynn's limitations. R. 233. Dr. Kollmer stated that Flynn was positive for paraspinal spasm, forward flexion at 40 degrees, positive SLR [straight-leg raise] right, positive sciatic notch tenderness. *Id.* He had an antalgic gait with slightly forward flexion position at standing. *Id.* He cannot squat, but can walk on his toes and heels. *Id.* He needs a cane to ambulate. *Id.*

On June 25, 2003, a second State Agency physician diagnosed Flynn with low back pain and found that Flynn had the following physical limitations: lift/carry occasionally up to 20 pounds; lift/carry frequently up to 10 pounds; stand/walk about 2-4 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push/pull ability was unlimited. R. 222-29.

On September 23, 2003, Dr. Kollmer diagnosed Flynn with right rotator cuff impingement syndrome, lumbrosacral strain with degenerative disc changes and radiculopathy subsequent to a laminectomy with fusion on July 31, 2002, and coccydynia. R. 230-31.

On March 17, 2004, Gregory Lower, D.O. found that Flynn had the following limitations: sit for 15 minutes at a time and up to one hour in an 8-hour workday; lift/carry no weight; stand for 15 minutes at a time and one to two hours in an 8-hour workday; walk 15 minutes at a time and one to

two hours in an 8-hour workday; no bending, pushing or pulling. Dr. Lower concluded that Flynn's prognosis was poor. R. 273.

On April 19, 2005, orthopaedist Edward F. Swann, M.D., examined Flynn for the Office of Disability Determinations. R. 347-48. Dr. Swann found Flynn with post laminectomy syndrome, finding moderate evidence of orthopaedic impairment of left leg radicular pain but that he was able to dress and undress without assistance. *Id*. He found further that Flynn could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand or walk less than two hours in an 8-hour day, sit about six hours in an 8-hour day and occasionally balance, but that he could never climb, kneel, crouch, crawl or stoop. R. 351-54.

Dr. Kollmer treated Mr. Flynn again on June 7, 2005. R. 342-43. Flynn reported that he has significant pain and difficulties and could not tolerate any work activity. R. 342. He was taking Temazepam and occasional pain medications. R. 342. X-rays of the lumbosacral spine showed a fusion mass with retained hardware in good alignment and position. R. 343. There was no evidence of loosening and no evidence of lucency. *Id*. On physical examination, Flynn had a positive hyperextension test, positive posterior iliac crest tenderness with paraspinal muscle spasm and tenderness and decreased forward flexion at 40 degrees. *Id*. He had equal heel and toe walk, although he had difficulty getting up on his toes. *Id*. He had 4+/5 anterior tibialis on the left side compared to the right side. *Id*. He had positive sciatic notch tenderness and positive straight leg raising. *Id*. He had negative tension signs or bowstringing. *Id*. Dr. Kollmer recommended a home exercise program, physical therapy, and prescribed Restoril for sleep and Lortab. *Id*. Flynn was to return in two years for reevaluation. *Id*.

On June 22, 2005, Dr. Kollmer completed a Medical Assessment form. R. 345-46. Dr. Kollmer opined that Flynn's physical limitations were: sit 30 minutes at one time for a total of 3 hours in an 8-hour day; standing for 10 minutes at a time for a total of less than one hour in an 8-hour day; lift/carry 10 pounds; walk 10 minutes at a time for a total of less than one hour per day; rarely push/pull; very limited bending; avoid vibration and unprotected heights. R. 345-346.

**B.     THE ANALYSIS**

1.     **Side Effects of Medication**

Flynn argues that the ALJ erred because he failed to consider the side effects of any medication taken by Flynn. In a questionnaire completed by Flynn on September 16, 2002, he stated that side effects of medication were "always feeling tired and lack of concentration." R. 97-98. In another questionnaire completed on March 29, 2003, Flynn states he was "tired all the time but not able to sleep because of pain in leg. My wife tells me that I am very moody and that I am not acting right all the time." R. 111-12. Flynn argues that the ALJ should have inquired into the side effects of all medications listed on a pharmacy print out contained in the administrative record, because the side effects of those medications were material to Flynn's ability to concentrate. Doc. 20 at 8.

Flynn's argument about the side effects of medication is based largely upon the *possible* side effects described in the Physician's Desk Reference or websites, as opposed to evidence of *actual* side effects. The ALJ asked Flynn about his medications at the hearing held on May 10, 2005. R. 363. The ALJ also considered the medications listed on the pharmacy print out, and Flynn's history in taking those medications. R. 25, 26-27. Further, to the extent Flynn argues that the medications

possibly effected his concentration, two state agency physicians found that Flynn only had mild difficulties maintaining concentration, persistence or pace. R. 204, 211.

In the absence of any complaints by Flynn to his physicians regarding medication side effects, and in the absence of any doctor expressing a concern about medication side effects, the failure of the ALJ to inquire further into possible side effects given the record in this case was not erroneous. *See, French v. Massanari*, 152 F. Supp. 2d 1329, 1338 (M.D. Fla. 2001).

### 2. **Hypothetical Question Posed to the VE**

Flynn argues that the ALJ failed to include all of his limitations when he posed the hypothetical questions to the VE. The ALJ found that Flynn had the residual functional capacity to perform a significant range of sedentary work.[2] Flynn complains that the ALJ asked the VE to assume restrictions of unskilled sedentary and light work that would permit sit/stand options. Doc. 20 at 11. Flynn argues that "light work" requires the ability to lift 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, which is inconsistent with the ALJ's determination of Flynn's actual limitations. *Id*.

The Commissioner responds that Flynn misunderstands the question posed to the VE, and that the question asked encompassed the ability to perform light <u>or</u> sedentary work with a sit/stand option. R. 407. The VE identified two occupations that were unskilled light work (R. 407) and two occupations that were unskilled sedentary work (R. 408), all of which existed in a significant numbers.

---

[2] Specifically, the ALJ found that Flynn could "lift and/or carry 10 pounds, occasionally, and less than 10 pounds, frequently; he can stand and/or walk 2 hours and sit for up to 6 hours in an 8-hour workday, with a sit/stand option to permit him to change positions as needed, and with normal breaks and lunch time; he can climb stairs and ramps, but not ropes, ladders or scaffolds; he can occasionally balance, stoop, kneel, crouch or crawl; he cannot perform repetitive push/pull functions with his lower extremities and can occasionally perform overhead reaching functions with his right upper extremity; he should avoid extreme temperature changes, humidity, dampness, vibration and hazards in the work place." R. 29, Finding 6.

The VE's opinion that Flynn could perform unskilled work at the sedentary level provides substantial evidence for the ALJ's determination that there were a significant number of jobs in the national economy that Flynn could perform. R. 30.

### 3. Refusal to Allow Flynn's Spouse to Testify

Flynn argues that the ALJ's refusal to allow "collaborative" testimony by his spouse violated the ALJ's duty to elicit clearly relevant and available testimony. Without determining the nature of the testimony to be offered, the ALJ refused to accept the testimony because he found that spousal testimony was "not particularly helpful." R. 375. The Commissioner argues that remand is warranted in such cases only when the claimant shows prejudice. The Commissioner argues that because Flynn fails to show that his spouse would have provided any relevant testimony that differed in any material way from his own testimony, he fails to establish prejudice.

The ALJ "has a basic obligation to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Regulations established by the Commissioner provide that a party "has a right to appear before the administrative law judge . . . to present evidence and to state his or her position." 20 C.F.R. § 404.950(a). The party's right to present evidence, however, is not without limitations. An ALJ retains the inherent authority to control the proceedings and exclude, for example, testimony that is cumulative or unnecessary.

An ALJ does not err by excluding lay witness testimony when medical evidence supports the ALJ's determination. *Landry v. Heckler*, 782 F.2d 1551, 1554 (11th Cir. 1986). *See also, McCloud v. Barnhart*, 166 Fed. Appx. 410, 417, 2006 WL 177576 *6 (11th Cir. Jan 25, 2006) (ALJ's exclusion

of husband's testimony was harmless error where the ALJ found the claimant lacked credibility and the claim was unsupported by medical evidence).

In this case, there was ample medical evidence that Flynn suffered pain, but that the pain did not prevent Flynn from all work. R. 26. Further, the ALJ found that Flynn's allegations were generally credible to the extent that they are consistent with medical signs, diagnostic testing and the opinions of treating and examining medical sources. R. 27. It is unclear what more Flynn possibly could have gained from his spouse's testimony.

Even if a hearing is "less than totally satisfactory," remand is unwarranted unless the claimant can show prejudice. *Kelley v. Heckler*, 761 F.2d 1538, 1540-41 (11th Cir. 1985). A showing of prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id*. at 1540. The main concern is whether there are any evidentiary gaps which would result in unfairness. *Id*. Where a party fails to indicate what facts could have been submitted that would have changed the outcome, the party fails to show he was prejudiced. *Id.* at 1541. *See also, Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (same). In the absence of any showing of prejudice, Flynn fails to show that the case should be remanded.

### 4.     **Failure to Apply the Correct Legal Standard**

Flynn argues that the Commissioner failed to apply the correct legal standard when he determined that Flynn was not disabled during the period of July 29, 2002, until September 23, 2003. Flynn points to evidence that his treating physician, Dr. Kollmer, excused him from work for more

than twelve months. Doc. 20 at 14-15. Flynn argues that the ALJ's conclusion that Dr. Kollmer "never opined that the claimant's impairments were so severe that he was unable to work" (R. 25), was inconsistent with Dr. Kollmer's repeated notes that Flynn was excused from work and that the ALJ's finding was not supported by substantial evidence.

The Commissioner argues that Dr. Kollmer's notes only evidenced his opinion that Flynn could not return to his former job (as this was a workers' compensation injury), and not that he was disabled from all work. The ALJ discussed Dr. Kollmer's October 2002 progress note in which Dr. Kollmer expected Flynn to be "set up with light work" if he was doing adequately. R. 25, 244. Dr. Kollmer's post-surgical progress notes repeatedly stated that Flynn was progressing well. R. 230, 238, 240, 241. In September 2003, when he last stated Flynn should remain out of work "at this time," Dr. Kollmer observed this was a Worker's Compensation case and as he stated previously "[a]gain, I want this patient to get a functional capacity evaluation." R. 231. The ALJ noted that Dr. Kollmer's reports "indicated improvement in the claimant's back condition and, at the very least, imply that Dr. Kollmer expected him to return to work." R. 25.

It is the ALJ's function to resolve any factual disputes, and the Court's function to determine if substantial evidence supports the ALJ's determination. The interpretation that Dr. Kollmer's work restriction notes only prohibited Flynn from returning to his former construction supervisor job, and not all work, is supported by Dr. Kollmer's repeated iterations that Flynn's condition was due to a workers' compensation injury. R. 230, 235, 238, 240. The Court finds that the ALJ did not misapply the law and that substantial evidence supports the Commissioner's decision.

## VI. CONCLUSION

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**. The Clerk should enter a judgment in favor of Defendant and close the case.

**DONE AND ORDERED** this 27th day of December, 2007.

*Donald P. Dietrich*
DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Deliver Copies of this Order to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Haila Naomi Kleinman, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia     30303-8920

The Honorable Gerald F. Murray
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Desoto Bldg., #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224